UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**MICHAEL LAPHAM,**

     **Plaintiff,**

**vs.**                          **CASE NO.:**

**FLORIDA FISH AND WILDLIFE
CONSERVATION COMMISSION,
GREEN SWAMP WILDLIFE
MANAGEMENT AREA, and
SOUTHWEST FLORIDA WATER
MANAGEMENT DISTRICT,**

     **Defendants.**

_____ /

## COMPLAINT
## DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, MICHAEL LAPHAM, by and through his undersigned attorney, brings this lawsuit seeking injunctive and declaratory relief, and monetary damages against FLORIDA FISH AND WILDLIFE CONSERVATION COMMISSION ("FWC"), GREEN SWAMP WILDLIFE MANAGEMENT AREA ("Green Swamp"), and SOUTHWEST FLORIDA WATER MANAGEMENT DISTRICT ("SFWMD") (collectively "The Defendants") for violations of Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Defendants failed to accommodate Plaintiff's disabilities, and denied Plaintiff full and equal enjoyment of Defendants' services, facilities, and privileges. Defendants also failed to make reasonable modifications in policies, practices, and

procedures, denying Mr. Lapham the opportunity to use Defendants' public areas and services equitably.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the actions pursuant to 28 U.S.C. §§ 1331, 1343, for the Plaintiff's claims arising under the ADA and Section 504.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) - (b)(2) because, (1) the Defendants are located in this district, and or (2) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred and are occurring within this district.

## PARTIES

### PLAINTIFF

3. Plaintiff, Michael Lapham ("Mr. Lapham") was, at all times relevant, a resident of Charlotte County, Florida. Mr. Lapham is a paraplegic and uses a wheelchair to ambulate. He is registered gun owner and has obtained, and utilized a mobility impaired hunting license since approximately 2007, and has hunted at approximately thirteen (13) state affiliated facilities in Florida.

### DEFENDANTS

4. Defendant, Florida Fish and Wildlife Conservation Commission ("FWC") is a public entity within the meaning of 42 U.S.C. § 12131(1). FWC is a state entity that exercises the regulatory and executive powers of the state with respect to wild animal life and fresh water aquatic life, and marine life pursuant to Fla Stat. § 379.1025 to include the Wildlife Management Areas.

2

5.     Defendant, Green Swamp Wildlife Management Area ("Green Swamp") is a public entity within the meaning of 42 U.S.C. § 12131(1). Green Swamp consists of 50,6922 acres in Lake, Polk and Sumter County and provides hunting and other outdoor activities to Florida citizens.

6.     Defendant, Southwest Florida Water Management District ("SFWMD"), is a public entity within the meaning of 42 U.S.C. § 12131(1). SFWMD is a governmental authority which manages the water resources for west-central Florida as defined in Fla. Stat. § 373.069 (2)(d).  SFWMD cooperatively manages Green Swamp WMA.

7.  All Defendants receive federal financial assistance within the meaning of the Section 504 of Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and are, therefore, required to comply with Section 504 and its regulations. [1]

## INTRODUCTION

Florida is reported to have  one of the largest wildlife management area (WMA) systems in the country at nearly 6 million acres. FWC is the lead manager or landowner on over 1.4 million acres and works in partnership with other governmental or private landowners on another 4.5 million acres.[2] There are approximately one hundred and sixty (160) WMA's in Florida.  WMAs offer various activities for individuals to enjoy outdoor activities to include hiking, boating, birdwatching, camping and hunting. Some of the WMAs are Cooperative Areas, these are  lands where the FWC works in partnership with other governmental or private landowners. Some WMAs are cooperatively managed by *water* management areas, and or the Florida Forest Service. Green Swamp is a WMA, and is cooperatively managed by  Southwest Florida Water

---

[1]  *See* https://www.usaspending.gov/#/search/c54cbf858060c756c87eb7cc2af8ecd9.
[2]  Found at https://myfwc.com/hunting/wma-brochures/ ( last visited  November  9, 2019).

Management District. To hunt at a WMA, a hunting license must be obtained from the Florida

Fish and Wildlife Conservation Commission. If you are an individual with a disability, you may

obtain a disabled hunting license which allows for certain accommodations. One such

accommodation is the use of an ATV for those hunters who cannot walk. The FWC and the

WMAs promulgate rules for the use of an ATV while hunting, and these rules vary greatly.

## FACTUAL ALLEGATIONS

8.      Mr. Lapham is married with 2 step children. Mr. Lapham became a paraplegic in

2003 as a result of a motorcycle accident. Mr. Lapham has use of his arms and upper body, but

uses a wheelchair to ambulate.

9.      Mr. Lapham has been an avid hunter of deer, hog, and upland game for

approximately twenty three (23) years. He engages in number of physical activities, and does not

allow his disability to define how he will live his life. He has a concealed weapon permit, and is

an experienced hunter with a rifle, shot gun, cross bow, and compound bow.

10.      The FWC offers hunts on some wildlife management areas to hunters who are

certified to be mobility-impaired.   Mr. Lapham has been awarded approximately twenty two

(22) mobility impaired hunting permits since 2009.

11.      Mr. Lapham drives a Ford F150 with wheelchair lift, and uses hand controls to

operate his vehicle. When he hunts, he uses his truck to trailer his All-Terrain Vehicle ("ATV"),

and uses his ATV to navigate through the WMAs while hunting.

12.      Prior to being able to using his ATV, Mr. Lapham must obtain an Alternative

Mobility Permit (AMP). An AMP allows persons who cannot walk, or cannot walk without

assistance due to severe and permanent physical disabilities, to drive or be transported by

specific vehicles on selected WMAs. In addition to the AMP, a disabled hunter can also obtain an SUV permit which is reported to allow those who are permanently physically disabled to have enhanced access to selected WMAs. Mr. Lapham holds both permits.

13.    Even when a disabled hunter obtains both the AMP and the SUV permit they are still severely limited in where they can hunt and use their ATV, even though the ATV is required due to their disability.

14.    The hunting grounds on the WMAs consist of named and numbered roads, which are used by hunters to drive their vehicle on while traveling through the hunting grounds. Trails and firebreaks chute off from the named roads which hunters traverse by foot.

15.    Each WMA has their own rules for how and when Mr. Lapham can use his ATV, and these rules vary greatly without substantive reason.  Some WMAs allow the use of ATVs pretty much throughout the WMA, other greatly restrict its use, creating an inequitable hunting opportunity for Mr. Lapham.

16.    For example, Mr. Lapham has been allowed to use his ATV both on the numbered roads and the trails at four (4) WMAs to include: Fred C. Babcock/Cecile M. Webb in Punta Gorda, Three Lakes in Osceola, Seminole Forest WMA, and Babcock Ranch Preserve.

17.    However at these four (4) WMAs, and many others, Mr. Lapham is prohibited from using his ATV off trail to hunt, and severely limit where he can set up his hunting stand. In contrast, a hunter without a disability can traverse freely through the WMA to hunt, as long as they adhere to other applicable WMA rules.

18.    Unlike a hunter who is not disabled, at these four (4) WMAs, Mr. Lapham is also prohibited from hunting on trails designated  as "walk in" areas.

19.     In addition to hunting at the WMAs many hunters also camp there. Sleeping at the campground allows the hunters to stay on site so that they can begin their hunt days early each morning. For Mr. Lapham, a wheelchair user, camping on site provides even more convenience. Unlike the four (4) WMAs mentioned, oddly Green Swamp prohibits Mr. Lapham from using his ATV in the campground.

20.     Mr. Lapham planned a ten (10) day hunting trip to begin on November 30, 2018 at Green Swamp. He had been told the deer hunting was exceptional there. The plan was to camp and hunt at Green Swamp for approximately five (5) days alone, and then be joined by a friend for the remaining days.

21.     Prior to going to Green Swamp, Mr. Lapham called the FWC to learn of the accommodations for disabled hunters offered at Green Swamp. He was transfer by phone to a person believed to some kind of an American with Disabilities Act (ADA) coordinator for the camp who told him he could only use his ATV on the trails and fire breaks, but curiously not on the numbered roads where vehicles are allowed to travel, as allowed at the four (4) WMAs mentioned above. He asked for the accommodation and modification to be allowed to use his ATV, as he had done at the other WMAs, but that request was denied. Mr. Lapham also asked to be able to use his ATV off trail so that he could set up his tree stand, that request was also denied.

22.     On November 30, 2018, Mr. Lapham arrived at Green Swamp, set up his camp, and then headed out to hunt. Due to the discriminatory rules at Green Swamp, Mr. Lapham could not ride his ATV on the numbered roads and trails.

23.    He was instead required to follow an unnecessary cumbersome and time consuming procedure. First, he had to drive his truck up a numbered road, with his ATV on the trailer on the back. Once he arrived at a trail he wanted to hunt, he had to drop his ATV off the trailer. Noting that for Mr. Lapham this requires him to get out of his truck, into his wheelchair, manually drop the trailer gate, unstrap the ATV, push the ATV off of the trailer, transfer his body from his wheelchair to ATV, then hook the wheelchair up to ATV so he could pull it beside the trailer, and then finally take his ATV down the hunting trail to begin hunting.

24.    Mr. Lapham must always hunt while on the trial. Mr. Lapham is  never allowed to take his ATV off the trial to go into the woods to hunt like non-disabled hunters are allowed to do.

25.    Once done on the trail, he had to drive his ATV back to the truck parked on a numbered road, and repeat the process in reverse. Once everything was loaded and he was off his ATV, out of his wheelchair, then back in the cab of his truck in his truck, he was forced to drive his truck up to the next hunting trail, only to repeat the process all over again.

26.    The unloading and loading process takes approximately fifteen (15) minutes, as opposed to non-disabled hunter who can simply jump out of their truck and walk a trail, or blaze their own trail.

27.    This process was exhausting and nonsensical, because Defendants allowed all hunters to drive their vehicles on the numbered roads, but curiously denied Mr. Lapham use of his ATV as an accommodation on these same roads. Green Swamp was the only WMA he had been to which discriminated against him in this way.

28.     Mr. Lapham, respectful of what he was told to do, followed this procedure. As he was loading his ATV the first day, he was approached by a FWC game warden. Mr. Lapham told the game warden how unfair it was that he was forced to load and unload his ATV when abled bodied hunters have much less restricted movement.

29.     He then asked the FWC game warden to accommodate him, and allow him to use his ATV on the number roads and trails, the request was denied. He also asked to be able to go off trail to set up his tree stand, that accommodation was also denied. He continued to hunt following the rules as prescribed to him.

30.     Later that day the FWC game warden found Mr. Lapham at the campground and told him he could use his ATV on the numbered roads and trails, and would no longer be forced to keep loading and unloading the ATV.

31.     Mr. Lapham then hunted freely, but only on the trails, and with accommodation, for three (3) days in that fashion, using only his ATV. The same way he has hunted at least four (4) other FWC facilities.

32.     At the end of the day, believed to be December 3, 2018, he was approached by a person who identified himself as a "biologist". The biologist told Mr. Lapham he was prohibited from using his ATV on the numbered roads. He would now be required to trailer his ATV, drive to a trail he wanted to hunt, unload his ATV, go down the trail, and if he wanted to try a different trail, he would have to load his ATV, and start the process over.

33.     Mr. Lapham repeatedly requested the accommodation of being able to use his ATV with the biologist, and with the other individuals working at the check guard station who were present during the conversation. The discussion about his need for an accommodation is

believed to have lasted at least twenty (20) minutes.  His request was simply to use his ATV as he had been doing for the past few days, and as he had done at the other four (4) WMAs. The request was repeatedly denied.

34.     During this discussion he also addressed the discriminatory rules of limiting hunters who use ATV to only hunt from the trails and the roads, and not be allowed to traverse into the woods. Mr. Lapham requested the accommodation and modification of being able to blaze a trial into the woods to hunt like an abled bodied hunter. This request was also denied.

35.     Respectful of the order mandated by the biologist, Mr. Lapham reverted back to towing his ATV from trail to trail to hunt. It was exhausting and very stressful. As a wheelchair user, Mr. Lapham is mindful of the higher possibility of injury when being required to engage in such physical activities.

36.     On December 5, 2018, his hunting buddy arrived and found Mr. Lapham exhausted, and stressed due to the failure of the Defendants to accommodate him.

37.     On December 6, 2018, Mr. Lapham, again, hunted per the FWC biologist's instructions, then unfortunately  Mr. Lapham began feeling ill from the stress of the rules at Green Swamp.

38.     On December 7, 2018, Mr. Lapham fell off of his ATV trying to pick something up.  Mr. Lapham was frustrated with the erroneous rules, and the way Defendants treated him, and decided he would leave the hunting trip three (3) days early.

39.     Mr. Lapham attempted to rectify this issue on-site, and prior to arrival at Green Swamp prior to filing his federal Complaint.

40.     Defendant, Florida Fish and Wildlife Conservation Commission has the authority to require: Fred C. Babcock/Cecile M. Webb in Punta Gorda, Three Lakes in Osceola, Seminole Forest WMA, and Babcock Ranch Preserve to modify their ATV polices to provide Mr. Lapham the relief he seeks.

41.     Plaintiff has a very long history of hunting at WMAs, and shall return to Defendants' facilities to hunt often in future. Since this event Mr. Lapham has returned to WMAs to hunt, and continues to be subjected to discrimination.

42.     As a result of Defendants' actions described above, Mr. Lapham  suffered irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and a deprivation of  his rights to non-discrimination on the basis of the his disabilities.

**COUNT I**

**VIOLATIONS OF TITLE II OF THE AMERICAN'S
WITH DISABILITIES ACT**

43.     Plaintiff repeats and re-alleges allegations ¶¶ 1-42 in support of his claims.

44.     In Count I, Plaintiff seeks declaratory relief, permanent injunctive relief, and monetary damages pursuant to Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., and its implementing regulations.

45.     Plaintiff is an individual who is a paraplegic, and his disabilities substantially limits major life activities as defined by Title II of the ADA. Plaintiff meets the essential eligibility requirements for Defendants' services at all times material hereto and is entitled to the protections of the ADA under 42 U.S.C. § 12132, *et seq*., and its implementing regulations.

46.     Defendants are public entities pursuant to 42 U.S.C. § 12131 (1), and are subject to the mandates of Title II of the ADA and its implementing regulations.

47.     No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.  42 U.S.C. § 12132.

48.      Defendants failed to accommodate Plaintiff's disability, and denied Plaintiff full and equal enjoyment of Defendants' services, or the participation in programs or activities provided by a public entity. 42 U.S.C. § 12132 (2). Defendants also failed to make reasonable modifications in policies, practices, and procedures, and failed to train personnel to work effectively with persons with a disability.

49.     Plaintiff specifically asked for a reasonable accommodation and or modification and it was denied. Defendants had ample time to correct the denial and failed to do so.

50.     A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—
(i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; (iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others. 28 C.F.R. § 35.130.

51.     A public entity may not deny a qualified individual with a disability the opportunity to participate in services, programs, or activities that are not separate or different, despite the existence of permissibly separate or different programs or activities. 28 C.F.R. § 35.130 (2).

52.     A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;  (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or  (iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State. 28 C.F.R. § 35.130 (3).

53.     Defendant, Florida Fish and Wildlife Conservation Commission has the authority to require Fred C. Babcock/Cecile M. Webb in Punta Gorda, Three Lakes in Osceola,  Seminole Forest WMA, and  Babcock Ranch Preserve to modify their  ATV policies to  provide Mr. Lapham the relief he seeks to maintain compliance with the ADA.

54.     Defendants' actions were intentional and violated the rights of the Plaintiff by their refusal to reasonably accommodate Plaintiff, even after Defendants were put on full notice of their obligations to abate such discriminatory actions.

55.     Plaintiff has been injured and aggrieved by, and will continue to be injured and aggrieved by Defendants' discrimination.

WHEREFORE, Plaintiff requests the relief set forth below.

## COUNT II

## VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF 1973

56.     Plaintiff repeats and re-alleges allegations ¶¶ 1-42  in support of his claims.

57.     Plaintiff in this matter requests declaratory relief, permanent injunctive relief, and seeks monetary damages pursuant to Section 504.

58.     Plaintiff is an individual who is a paraplegic, and  uses his wheelchair 100% of the time to ambulate. His disabilities substantially limits major life activities, and is, therefore, considered to be an individual with a disability under Section 504.   Plaintiff is otherwise qualified under Section 504 because he meets the essential eligibility requirements for Defendants' services at all times material hereto.

59.     In Count II, Plaintiff alleges Defendants discriminates against people with disabilities in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, which provides, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in Section 705 (20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

60.     Defendants are recipients of federal financial assistance, and, therefore, subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Defendants have discriminated against Plaintiff on the basis of his disability in violation of 29 U.S.C. § 794 and its implementing regulations as more fully described in Count One. Such discrimination includes but is not limited to failure to: modify policies and procedures to prevent discriminatory exclusion from and or denial of services.

61.     Defendant, Florida Fish and Wildlife Conservation Commission has the authority to

require: Fred C. Babcock/Cecile M. Webb in Punta Gorda, Three Lakes in Osceola, Seminole Forest WMA, and Babcock Ranch Preserve to modify their ATV policies to provide Mr. Lapham the relief he seeks to maintain compliance with Section 504 based on their federal funding requirements.

62.     Defendants' actions were intentional and violated the rights of the Plaintiff by their refusal to reasonably accommodate Plaintiff, even after Defendants were put on notice of their obligations to abate such discriminatory actions.

63.     As a result of Defendants' actions described above, Plaintiff suffered and continues to suffer, and will in the future suffer irreparable loss and injury including, but not limited to degradation, humiliation, embarrassment, emotional distress, and a deprivation of his rights to non-discrimination on the basis of his disabilities.

WHEREFORE, Plaintiff requests the relief set forth below.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

A.     The Court assume jurisdiction;

B.     The Court enter a declaratory judgment that the actions of Defendants, FWC, SWFMD, and Green Swamp, described in this Complaint be in violation of the ADA, and Section 504 of the Rehabilitation Act;

C.     Enter a permanent injunction for the Plaintiff enjoining Defendants, their successors, agents and employees, and all other persons in concert therewith, from taking or continuing any action which has the purpose or effect of discriminating against the Plaintiff on the basis of failing to effectively

accommodate, and thereby provide services in violation of the ADA and Section 504 of the Rehabilitation Act; This injunction seeks specifically the following;

    i.   Enjoin the Defendants from prohibiting Mr. Lapham use his ATV on all numbered roads and trails at Green Swamp and at the campground;

    ii.   Enjoin the Defendants from prohibiting Mr. Lapham from hunting at least 100 yards off trail with his ATV at Green Swamp, Fred C. Babcock/Cecile M. Webb in Punta Gorda, Three Lakes in Osceola, Seminole Forest WMA, and Babcock Ranch Preserve;

    iii.   Enjoin the Defendants from prohibiting Mr. Lapham to access the "walk in" areas of the WMAs for the purposes of hunting at: Green Swamp, Fred C. Babcock/Cecile M. Webb in Punta Gorda, Three Lakes in Osceola, Seminole Forest WMA, and Babcock Ranch Preserve;

D.    Award monetary damages to Mr. Lapham for his degradation, mistreatment, and humiliation as a result of Defendants' discriminatory actions in violation of Title II of the ADA;

E.    Award monetary damages to Mr. Lapham for his degradation, mistreatment, and loss of dignity as a result of Defendants' discriminatory actions in violation of Section 504 of the Rehabilitation Act;

F.    Award reasonable attorney's fees, expenses and costs of suit; and

G.    Grant such other relief as the Court may deem equitable and just under the circumstances.

## **JURY DEMAND**

Plaintiff demands trial by jury on all issues which can be heard by a jury.

Date:  November 13, 2019.

Respectfully submitted,
Morgan & Morgan

*/s/ Sharon Caserta*
Sharon Caserta, Esq.
Florida Bar No.: 0023117
Morgan & Morgan
Deaf /Disability Rights
76 South Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 361-0078 (Voice)
(904) 245-1121 (Videophone)
(904) 361-4305 (Facsimile)
scaserta@forthepeople.com
*Trial Counsel for Plaintiff*