UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**MICHAEL LAPHAM,**

    **Plaintiff,**

v.                                                            Case No: 5:19-cv-579-Oc-34PRL

**FLORIDA FISH AND WILDLIFE
CONSERVATION COMMISSION and
SOUTHWEST FLORIDA WATER
MANAGEMENT DISTRICT,**

    **Defendants.**

### REPORT AND RECOMMENDATION[1]

Plaintiff brings this action for disability discrimination against the Florida Fish and Wildlife Conservation Commission ("FWC") and the Southwest Florida Water Management District ("SWFMD"). (Doc. 8). SWFMD answered the complaint (Doc. 14), but then subsequently filed a motion to dismiss the complaint. (Doc. 25). FWC also filed a motion to dismiss the complaint. (Doc. 26). For the reasons discussed below, I submit the motions (Docs. 25, 26) should be denied.

    I.        **BACKGROUND**[2]

Plaintiff is a paraplegic and uses a wheelchair to ambulate. (Doc. 8 ¶ 8). In November 2018, Plaintiff planned a ten-day hunting trip at Green Swamp, a wildlife management area ("WMA")

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] The background "facts" are taken from the Complaint (Doc. 8) and taken as true for purposes of this motion to dismiss.

in Florida. (Doc. 8, p. 3, ¶ 20). Green Swamp is a "Cooperative Area" and FWC cooperatively works with SWFMD to manage the area. (Doc. 8, p. 3). To hunt at a WMA, a hunting license must be obtained from FWC. (Doc. 8, p. 4). Individuals with disabilities may obtain a disabled hunting license which provides for certain accommodations, including the use of an ATV. (Doc. 8, p. 4). FWC and the WMAs promulgate rules for the use of an ATV while hunting. (Doc. 8, p. 4).

Before Plaintiff's hunting trip, he contacted FWC to learn about accommodations for disabled hunters at the Green Swamp. (Doc. 8 ¶ 21). Plaintiff spoke with someone he believed to be an Americans with Disabilities Act ("ADA") coordinator who informed him "he could only use his ATV on the trails and fire breaks, but . . . not on the numbered roads where vehicles are allowed to travel." (Doc. 8 ¶ 21). Plaintiff asked for an accommodation to use his ATV on numbered roads at Green Swamp as he had done at four other WMAs previously, but was denied.[3] (Doc. 8 ¶ 21).

On November 30, 2018, Plaintiff arrived at Green Swamp, set up his camp, and headed out to hunt. (Doc. 8 ¶ 22). Plaintiff claims that due to his denial of an accommodation, his hunting trip at the Green Swamp caused him to follow an "unnecessary cumbersome and time-consuming procedure." (Doc. 8 ¶ 23). Plaintiff had to drive his truck up a numbered road with his ATV on a trailer in the back and drop off his ATV at the trail he wanted to hunt. Plaintiff claims that the "process was exhausting and nonsensical" because all of the other hunters drove their vehicles on numbered roads, where Plaintiff could not use his ATV. (Doc. 8 ¶¶ 23, 27).

At one point, an FWC game warden approached Plaintiff while he was loading his ATV. (Doc. 8 ¶ 28). Plaintiff told the game warden "how unfair it was that he was forced to load and unload his ATV when able bodied hunters have much less restricted movement." (*Id.*). Plaintiff

---

[3] Plaintiff claims that he has been able to use his ATV both on numbered roads and the trails at Fred C. Babock/Cecile M. Webb in Punta Gorda, Three Lakes in Osceola, Seminole Forest WMA, and Babcock Ranch Preserve. (Doc. 8, ¶ 16).

again requested an accommodation to use his ATV on numbered roads and trails, and the game warden denied his request. (Doc. 8 ¶ 29). Later that day, the game warden found Plaintiff at the campground and told him he could use the ATV on the numbered roads and trails. (Doc. 8 ¶ 30). After three days of hunting, a person who identified himself as a "biologist" approached Plaintiff and informed him that he was prohibited from using the ATV on the numbered roads. (Doc. 8 ¶ 32). Plaintiff requested an accommodation from the biologist and other individuals working at the check guard station but was denied. (Doc. 8, ¶ 33).

Plaintiff filed this action against the FWC and SWFMD for disability discrimination pursuant to Title II of the Americans with Disability Act, 42 U.S.C. § 12101, et seq. ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Plaintiff alleges that Defendants failed to accommodate his disability and denied him full and equal enjoyment of the services, programs, or activities provided by a public entity; failed to make reasonable modifications in policies, practices, and procedures; and failed to train personnel to work effectively with persons with a disability. (Doc. 8). Both Defendants filed the instant motions to dismiss. (Docs. 25 & 26).

## II.   LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations

of the complaint as true, and accept all reasonable inferences therefrom. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). In considering the sufficiency of the complaint, the court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.*

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Ashcroft* and *Twombly*. First, "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

A well-pled complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984).

### III.  DISCUSSION

#### A. SWFMD's Motion to Dismiss

First at issue are Plaintiff's claims against SWFMD brought pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act. SWFMD has moved to dismiss both claims. (Doc. 25).

##### 1. Title II of the ADA

Title II of the ADA prohibits discrimination on the basis of disability in all of a public entity's "services, programs, and activities." *Id.* § 12132; 28 C.F.R. § 35.130(a). Section 504 of the Rehabilitation Act similarly prohibits such discrimination by entities that receive federal

financial assistance. 29 U.S.C. § 794. Given the textual similarities between the two statutes, "the same standards govern" claims under both, and we "rel[y] on cases construing [Title II and § 504] interchangeably." *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1133 (11th Cir. 2019) (*quoting T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010)).

To state a claim under Title II of the ADA or § 504, Plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability. *Silberman,* 927 F.3d at 1134. Additionally, where, as here, Plaintiff alleges discrimination based on a public entity's refusal to provide a reasonable accommodation, Plaintiff must also establish that he requested an accommodation or the need for one was obvious and that the public entity failed to provide a reasonable accommodation. *Schwarz v. The Villages Charter Sch., Inc.*, 165 F. Supp. 3d 1153, 1173 (M.D. Fla. 2016), a*ff'd sub nom. Schwarz v. Bd. of Supervisors on behalf of Villages Cmty. Dev. Districts*, 672 F. App'x 981 (11th Cir. 2017).

SWFMD has not challenged that Plaintiff is a qualified individual or that he has been denied the full or equal benefit of a program based on his disability. Instead, SWFMD argues that Plaintiff has not alleged any action taken by SWFMD which excluded Plaintiff from participation in any services, programs, or activities offered at Green Swamp. (Doc. 25, p. 4).

Plaintiff alleges that SWFMD is a public entity that cooperatively manages the Green Swamp with FWC (Doc. 8 ¶ 6), and SWFMD admits to that statement in its Answer. (Doc. 14 ¶ 6).[4] Plaintiff has alleged several instances where he requested to use his ATV on certain roads at the Green Swamp and was denied. (Doc. 8 ¶¶ 21, 29, 33). Although Plaintiff has specified two

---

[4] In its motion, SWFMD claims that it owns the Green Swamp but FWC manages it. (Doc. 25).

interactions that occurred between him and FWC employees (the ADA coordinator and the game warden) (Doc. 8 ¶¶ 21, 29), his allegations about SWFMD's role in managing the Green Swamp are sufficient to state a claim against SWFMD. Additionally, Plaintiff alleges that an unknown biologist, surrounded by a group of other individuals at a guard station, withdrew Plaintiff's accommodation and subsequently denied his follow up request for an accommodation. (Doc. 8 ¶¶ 32, 33). Plaintiff asserts that he should have the opportunity to proceed to discovery to discover if these employees worked for SWFMD. (Doc. 30).

At this stage in the proceedings the question is not whether Plaintiff will ultimately prevail on his claim, but whether the allegations are sufficient to support his claim. *Twombly*, 550 U.S. at 570. Plaintiff has sufficiently-stated a claim against SWFMD under Title II of the ADA.[5]

## 2. Section 504 of the Rehabilitation Act

SWFMD also argues that Plaintiff's claims under the Rehabilitation Act must be dismissed because Plaintiff did not specifically demand a reasonable accommodation from SWFMD. (Doc. 25, p. 5). Since the ADA and Section 504 standards are interchangeable, the ADA standard for requesting an accommodation is also applicable to Section 504. *See Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1133 (11th Cir. 2019). Knowledge of a need for an accommodation "may derive either from an individual's request or where the need is obvious." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, No. 6:11-CV-1387-ORL-31, 2013 WL 1212860, at *4 (M.D. Fla. Mar.

---

[5] Plaintiff's other theory of liability is based on SWFMD's status as an owner of the Green Swamp. SWFMD contends that it "owns the Green Swamp," and "pursuant to a Cooperative Agreement between SWFMD and the FWC, the FWC manages the Green Swamp WMA with respect to its administration of public recreational hunting and fishing programs at the Green Swamp WMA." (Doc. 25, p. 2). However, Plaintiff does not allege in his complaint that SWFMD "owns" Green Swamp. Therefore, the Court will not consider this argument.

25, 2013), *aff'd*, 768 F.3d 1135 (11th Cir. 2014); *see also Robertson v. Las Animas Cty. Sheriff's Dep't,* 500 F.3d 1185, 1198 (10th Cir. 2007).

Plaintiff alleges that he hunted at the Green Swamp for multiple days and had numerous interactions with various employees onsite. (Doc. 8). Plaintiff claims that his need for an accommodation was obvious because the game warden approached him after watching him load his ATV on his trailer. (Doc. 8 ¶ 28). Accordingly, at this time, Plaintiff has sufficiently alleged that his need for an accommodation was obvious.

Plaintiff has sufficiently stated a claim against SWFMD under Title II of the ADA and the Rehabilitation Act. Accordingly, SWFMD's motion to dismiss (Doc. 25) should be denied.

### B. FWC's Motion to Dismiss

Next at issue are Plaintiff's claims against FWC brought pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act. FWC has moved to dismiss both claims. (Doc. 26).

1. Failure to state a claim

FWC argues that Plaintiff failed to state a claim under the ADA or Section 504 because the Amended Complaint fails to allege separate claims against each Defendant and does not adequately identify which rules, policies, practices, and procedures are at issue. The critical issue under Rule 8(a) is whether Plaintiff has alleged "a short and plain statement of the claim," which he has done. Plaintiff alleged that he is a paraplegic, and on his hunting trip to Green Swamp he requested an accommodation to use his ATV and was denied. (Doc. 8 ¶¶ 20-21). Plaintiff has also alleged that the two defendants, FWC and SWFMD, cooperatively manage the Green Swamp. (Doc. 8 ¶¶ 4, 6). Plaintiff's complaint adequately placed Defendants on notice of what the claims are and the ground on which they rested. *See Weiland v. Palm Beach Cty. Sherriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015) ("A dismissal under Rule 8(a)(2) and 10(b) is appropriate where

'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'") (quoting *Anderson v. District Bd. Of Trustees*, 77 F.3d 364, 366 (11th Cir. 1996)).

Plaintiff has also clearly alleged that the "rules, policies, practices, and procedures" involve the denial of allowing him to use his ATV on FWC and SWFMD managed property. (Doc. 8). Additionally, Plaintiff has alleged that FWC "has the authority to require Green Swamp to modify their ATV policies." (Doc. 8 ¶ 61). As such, Plaintiff has sufficiently alleged a claim under the ADA and Section 504 that complies with Rule 8.

### 2. Eleventh Amendment immunity

FWC argues that as a state agency, it is entitled to immunity under the Eleventh Amendment and requests dismissal of Plaintiff's request for monetary relief for alleged violations of the ADA. (Doc. 26, pp. 4-5).

Congress can abrogate a state's immunity where "(1) Congress 'unequivocally expressed its intent to abrogate' the States' sovereign immunity in the statute at issue and (2) 'Congress acted pursuant to a valid grant of constitutional authority.'" *Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 956-7 (11th Cir. 2005) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)).

"Title II plainly expressed Congress's intent to abrogate Eleventh Amendment immunity." *Nat'l Ass'n of the Deaf v. Fla.*, 945 F.3d 1339, 1347 (11th Cir. 2020). Congress may abrogate sovereign immunity for "actual violations" of the Fourteenth Amendment or for "a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *United States v. Georgia*, 546 U.S. 151, 158 (2006); *Tennessee v. Lane*, 541 U.S. 509, 518 (2004). The legislation is valid if it exhibits "congruence and proportionality between the injury to

be prevented or remedied and the means adopted to that end." *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 365, (2001).

To determine if the legislation exhibits "congruence and proportionality" the Eleventh Circuit utilizes a three-step test. *Nat'l Ass'n of the Deaf*, 945 F.3d at 1348. First, the court should identify which right Congress sought to enforce when it enacted the ADA. *Id.* Next, the court should look to whether there is a history of unconstitutional discrimination to support Congress' determination that prophylactic legislation was necessary. *Id.* And third, the court should determine whether Title II is an appropriate response to the history and pattern of unequal treatment. *Id.*

It should be noted that FWC presented no argument on the congruence and proportionality test outlined by the Eleventh Circuit. It merely claimed that Plaintiff "does not allege any constitutional violation." (Doc. 26, p. 5). However, FWC never states why the conduct here does not violate the Constitution.

As to the first prong, Congress enacted Title II to "enforce the Fourteenth Amendment's prohibition on irrational disability discrimination." *Id.* (citing *Lane*, 541 U.S. at 510). "Classifications based on disability violate that constitutional command if they lack a rational relationship to a legitimate governmental purpose." *Lane,* 541 U.S. at 522.

Here, Plaintiff alleges that able bodied hunters are permitted to drive their vehicles on named and numbered roads in the Green Swamp, but he, a paraplegic, was denied the reasonable accommodation to ride his ATV on the exact roads. (Doc. 8 ¶¶ 21, 29, 32-35). Other district courts have examined similar situations involving disability discrimination in public parks and recreational facilities and have found that Title II validly abrogated Eleventh Amendment immunity. *See McBay v. City of Decatur, Ala.*, No. CV-11-S-3273-NE, 2014 WL 1513344, at *11

(N.D. Ala. Apr. 11, 2014) ("Thus, this court finds that, as applied to entertainment and recreational venues like those described in plaintiffs' complaint, Title II is a congruent and proportional exercise of Congressional power under Section 5."); *Fla. Disabled Outdoors Ass'n v. Coral Reef Park Co.,* No. 05-10073-CIV, 2006 WL 8433864, at *3 (S.D. Fla. Mar. 28, 2006) ("The Court finds that Title II of the ADA, as applied to access to public parks and recreational facilities, constitutes a valid exercise of Congress's enforcement power under Section 5 of the Fourteenth Amendment."); *see also Gaylor v. Georgia Dep't of Nat. Res.,* No. 2:11-CV-288-RWS, 2012 WL 3516489, at *5 (N.D. Ga. Aug. 15, 2012) ("Therefore, the Court finds that Congress' right to be vindicated-irrational disability discrimination in state parks and recreation facilities-passes the first prong of Boerne's inquiry."). Plaintiff alleges conduct that could be found to be irrational disability discrimination, which passes the first prong of the analysis.

As to the second prong, the Court should look to whether there is a history of unconstitutional discrimination to support Congress' determination that prophylactic legislation was necessary. *Nat'l Ass'n of the Deaf*, 945 F.3d at 1348. The Supreme Court in *Lane* noted that Congress "document[ed] a pattern of unequal treatment in the administration of a wide range of public services, programs, and activities. . .." *Lane*, 541 U.S. at 525; *see also* 42 U.S.C. 12101(a)(3) ("The Congress finds that discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, *recreation*, institutionalization, health services, voting, and access to public services.") (emphasis added). "[T]he Supreme Court considered the record supporting Title II as a whole, and conclusively held that Congress had documented a sufficient historical predicate of unconstitutional disability discrimination in the provision of public services to justify enactment of a prophylactic remedy pursuant to Congress's authority under Section 5 of the Fourteenth

Amendment." *Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.,* 405 F.3d 954, 958 (11th Cir. 2005)). Thus, the second prong of historical unconstitutional discrimination is satisfied in this case.

As to the third prong, the court must determine whether Title II is an appropriate response to the history and pattern of unequal treatment. This analysis is judged on an "individual or 'as-applied' basis in light of the particular constitutional rights at stake in the relevant category of public services." *Nat'l Ass'n of the Deaf*, 945 F.3d at 1351.

As the Eleventh Circuit discussed in *Nat'l Ass'n of the Deaf*, "Congress enacted the ADA in response to pervasive unequal treatment in the administration of state services and programs." *Id.* The court went on to explain:

> The ADA is a "limited remedy" because (1) it "only prohibits" discrimination based on disability, *Fla. Int'l*, 405 F.3d at 959, (2) it only requires "'reasonable modifications' that would not fundamentally alter the nature of the service provided," *Lane*, 541 U.S. at 532 (quoting 42 U.S.C. § 12131(2)), and (3) it provides affirmative defenses to prevent overly burdening state actors, *Reininger v. Oklahoma*, 292 F. Supp. 3d 1254, 1265 (W.D. Okla. 2017).

*Id.*

In this case, Title II provides an appropriate response to remedy the history and pattern of unequal treatment. FWC has not claimed that the modification (to allow disabled hunters to ride ATVs on roads that nondisabled hunters are permitted to drive on) would be burdensome. It appears that this change would be minimal and would remove a barrier to the accessibility of the services and activities provided at the Green Swamp. In fact, Plaintiff alleges that the roads he was denied the ability to ride his ATV on are already traversed by other vehicles. (Doc. 8 ¶¶ 21, 29, 32-35). Additionally, the remedy is proportionate and a "reasonable modification" that wouldn't change the nature of the activities and services provided at Green Swamp. Thus, the Court finds

that the relief available under Title II "is congruent and proportional to the injury and the means adopted to remedy the injury." *Fla. Int'l Univ.,* 405 F.3d at 959.

Moreover, irrationally preventing disabled persons from accessing state parks and recreation facilities could violate both the Fourteenth Amendment and Title II. *See Garrett,* 531 U.S. at 366–67 (finding that legislation affecting disabled persons receives rational-basis review under the Equal Protection Clause); 42 U.S.C. § 12132 (preventing discrimination in state services, programs, and activities). Plaintiff has clearly alleged that Defendants' actions were intentional, and that able-bodied hunters were permitted to drive vehicles on the very roads that he was denied the reasonable accommodation to ride his ATV on. (Doc. 8 ¶¶ 21, 29, 32-35, 54, 62). Plaintiff has also alleged that he has been allowed to use his ATV on numbered roads and trails at four other WMAs. (Doc. 8 ¶ 21).

Accepting as true (as the Court must at this stage of the proceedings) Plaintiff's factual allegations and viewing all allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged a plausible claim that FWC violated his constitutional rights. *Cf. Coop v. Dep't of Nat. Res., Missouri*, No. 05-0793-CV-W-GAF, 2007 WL 9718008, at *4 (W.D. Mo. Mar. 2, 2007) (finding on a summary judgment motion that there were "a number of rational reasons for not making the entire Park and all its paths and amenities completely accessible."). Accordingly, FWC's motion to dismiss should be denied on this basis as well.

### IV. RECOMMENDATION

For the foregoing reasons, it is respectfully RECOMMENDED that Defendants' Motions to Dismiss (Docs. 25, 26) be DENIED.

Recommended in Ocala, Florida on August 21, 2020.

                                                       PHILIP R. LAMMENS
                                                     United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy