UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**MICHAEL LAPHAM,**

    **Plaintiff,**

**v.**                                                           **Case No: 5:19-cv-579-MMH-PRL**

**FLORIDA FISH AND WILDLIFE
CONSERVATION COMMISSION and
SOUTHWEST FLORIDA WATER
MANAGEMENT DISTRICT,**

    **Defendants.**

## REPORT AND RECOMMENDATION[1]

This disability discrimination action is before me upon referral of four cross motions for summary judgment. (Docs. 74, 76, 77, 78). For the reasons explained below, I submit that the defendants' motions for summary judgment (Docs. 77 & 78) should granted, and the plaintiff's motions for summary judgment (Docs. 74 & 76) should be denied as moot.

### I. BACKGROUND

Florida Fish and Wildlife Conservation Commission ("FWC") exercises the regulatory and executive powers of the state with respect to wildlife, freshwater aquatic life, and marine life. Fla. Const., art. 4, § 9; Fla. Stat. § 379.1025. Southwest Florida Water Management District ("SWFWMD") is one of five water management districts in Florida.

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

(Doc. 77-3 at ¶2). SWFWMD's mission is to protect Florida's water resources, minimize flood risks, and ensure adequate water supply. (*Id.*)

SWFWMD owns the Green Swamp Wildlife Management Area ("WMA"), which consists of over 50,000 acres of wetlands and naturally preserved uplands in Lake, Polk, and Sumter counties. (Docs. 8 at ¶5; 77-3 at ¶2). FWC manages hunting activities in over 170 WMAs, including in the Green Swamp. (Doc. 77-2 at 12:6-12, 17:11-18:3; Doc. 78-1 at ¶5). Under a cooperative agreement between FWC and SWFWMD, FWC manages specified SWFWMD lands, including the Green Swamp, "to protect fish and wildlife and administer programs for public recreational hunting and fishing." (Doc. 74-3 p.2). The agreement requires FWC to "manage and maintain the lands and any facilities supporting public recreational hunting and fishing use in an environmentally acceptable manner and in accordance with good management practices," including establishing rules and regulations for the purpose of protecting and taking fish and wildlife; enforcing the applicable laws and regulations; providing public information on hunting and fishing and assistance to recreational hunters and anglers, operating and staffing the check stations, and operating and patrolling the campgrounds. (*Id.* at 2).

To hunt in the Green Swamp WMA, a hunter must obtain a hunting license from FWC. Doc. 79-1. ATV use is generally prohibited at the Green Swamp WMA. *See* Fla. Admin. Code Rules 40D-9.270, 68A15.061(1)(d)(5); *see also* Doc. 78-2 at 22:18-21. However, FWC has rules that provide ATV use through Alternate Mobility Permits ("AMP") and additional motor vehicle access through Special Use Vehicle ("SUV") permits. Fla. Admin. Code Rule 68A-9.008(2) ("Permits to operate vehicles otherwise permitted by rule, on roads not open to the public, will be issued based upon a determination that the applicant has

submitted an original certificate from a licensed physician certifying that the individual is permanently disabled in a way which renders normal walking impossible; or a copy of a valid, State-issued, permanent disability parking placard or card and the identification used to obtain the placard or card."); Rule 68A-9.008(3) ("Permits to operate an all-terrain vehicle will be issued based upon a determination that the applicant has submitted an original certificate from a licensed physician certifying that the individual is mobility impaired in that he or she is one of the following: paraplegic, hemiplegic, quadriplegic, permanently dependent upon a wheelchair for ambulation, permanently required to use braces or prosthesis on both legs, or complete single-leg amputation above the knee."); (Docs. 78-1 at ¶ 6; 78-2 at 23:1-18; 41:6-23).

The SUV permit allows someone with a disability to operate motor vehicles on roads not open to the public. (Docs. 78-1 at ¶ 8; 78-12 at 26:16-27:2). The AMP allows someone with a disability to drive ATVs at WMAs. (Doc. 78-1 at ¶ 9). An AMP holder is still subject to the regulations that apply to the WMA he is hunting in. (Doc. 78-1 at ¶10, 78-2 at 76:7-77:16; 82:10-16). There are public safety and environmental concerns for ATV uses that limit or prohibit the use of ATV within WMAs. (Docs. 78-1 at 78-2 at ¶14, 76:22-77:3). AMP holders are required to "access, read, follow and have in their personal possession the area specific time periods of use, maps and stipulations found in the SUV Management Areas Summary and the [AMP] Summary." (Doc. 74-9).

A disabled hunter may request additional accommodations beyond those provided by the AMP and SUV permit by submitting an ADA Accommodation Request Form to FWC. (Docs. 78-1 at ¶16; 79-1 p.1; 77-2 at 29:17-21, 32:3-33:10, 42:5-11). The ADA Accommodation Request form is available online at the FWC website, or in print form upon

request. (Doc. 78-1 at ¶16). After FWC receives a completed ADA Accommodation Request form, ADA Coordinator Paul Clemons reviews it and sends it to FWC's ADA Committee for recommendations. (Doc. 78-1 at ¶17). Mr. Clemons reviews the comments from committee members with FWC's Executive Director (or his designee), who makes the final decision. (Doc. 78-1 at ¶17). FWC attempts to respond to requests within 45 days of receiving a completed ADA Accommodation Request form. (Doc. 79-1 p.1).

Plaintiff, Mr. Lapham, planned a ten-day hunting trip at the Green Swamp WMA in November 2018. (Doc. 78-12 at 38:22-23, 85:5). Mr. Lapham has held an AMP, SUV permit, and Resident Persons with Disabilities Hunting and Fishing License since 2007 because he is a paraplegic and uses a wheelchair. (Docs. 78-12 at 17:17, 21:3-24, 28:10-13; 76-9).

A month or two before the trip, Mr. Lapham glanced through the rules and regulations for the Green Swamp WMA. (Doc. 78-12 at 29:11-18; 31:4-6). The day before the trip, Mr. Lapham called the general questions phone number that he found on the Green Swamp brochure to discuss access for ATV users. (Doc. 78-12 at 99:13-15).[2] Mr. Lapham remembers asking to drive his ATV on the named and numbered roads and into the campground. (Doc. 78-12 at 32:7-14). But he was told that the rules prohibited such ATV use. (Doc. 78-12 at 132:9-12). After this phone call, Mr. Lapham hoped that when he got there he would "figure out a way to make it work or to explain [his] situation and maybe somebody would understand." (Doc. 78-12 at 31:24-32:6).

On November 30, 2018, Mr. Lapham arrived at the Green Swamp. (Doc. 78-12 at 38:22-39:7). Because of the AMP rules at the Green Swamp, Mr. Lapham couldn't ride his

---

[2] FWC has no record of this call. FWC obtained phone records from Plaintiff's employer but they are difficult to discern.

ATV from the campsite to the hunting grounds. (Doc. 78-12 at 48:14-16, 106:17-20). Instead, he had to drive his truck on a numbered road with his ATV trailer on the back until he arrived at a trail he wanted to hunt. (*Id.* at 48:14-16, 106:17-20). Then Mr. Lapham had to stop his truck, get into his wheelchair, manually drop the trailer gate, unstrap the ATV, push the ATV off the trailer, and transfer himself from his wheelchair to his ATV. (*Id.* at 120:9-25).

On December 1, 2018, FWC officer Lt. McCorkle stopped and spoke with Mr. Lapham. (Doc. 78-16 at 48:1-13; 51:20-52:8). Lt. McCorkle is a conservation officer employed by FWC in its Division of Law Enforcement. (Doc. 78-16 at 9:14-10:17, 16:9-11). He was newly assigned to the Green Swamp in April 2018 and his first hunting season began in November 2018. (*Id.* at 60:23-61:6). Mr. Lapham asked Lt. McCorkle about operating his ATV from the campsite to his hunting area. (*Id.* at 48:9-17). Due to a computer glitch, Lt. McCorkle could not access the online AMP information, so he incorrectly told Mr. Lapham he could operate his ATV from the campsite to the hunting grounds. (*Id.* at 48:18-49:9). Mr. Lapham operated his ATV on the roads from his campsite to the hunting grounds for three days. (Docs. 78-12 at 52:6-9).

On either December 3 or 4, Mr. Lapham arrived at a check station and spoke with FWC Biologist Ethan Noel. (Doc. 78-12 at 52:10-22). Mr. Noel advised Mr. Lapham that he could not operate an ATV on the named roads and showed him a printed copy of the AMP and SUV regulations. (Doc. 78-3 at 69:6-70:22). Mr. Lapham informed Mr. Noel that an officer told him he could ride his ATV on the named roads. (*Id.* at 70:11-25). Mr. Noel did not make Mr. Lapham stop riding his ATV, instead he warned him that another officer might write him a ticket. (*Id.* at 71:1-14).

When Mr. Noel returned to his vehicle, he called Lt. McCorkle to see if there had been a rule change regarding ATV use that he was not aware of. (*Id.* at 71:18-72:14). Lt. McCorkle told Mr. Noel that he gave Mr. Lapham the incorrect information. (Doc. 78-16 at 54:2-8). After the phone call, Lt. McCorkle returned to the campground to find Mr. Lapham. (*Id.* at 54:2-20). Lt. McCorkle apologized, clarified the rule, and told Mr. Lapham that he could no longer use his ATV to drive from the campsite to the hunting grounds. (*Id.* at 51:10-52:8).

In the Amended Complaint, Mr. Lapham asserts claims against FWC and SWFWMD for disability discrimination pursuant to Title II of the Americans with Disability Act, 42 U.S.C. § 12101, et seq. ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Currently pending are motions for summary judgment filed by Mr. Lapham (Docs. 74 & 76), SWFWMD (Doc. 77), and FWC (Doc. 78).

## II.  LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant carries her burden by showing that there is an absence of evidence supporting the non-movant's case. *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial. *Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir. 2006). Affidavits submitted in relation to a summary judgment motion must be "based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence." *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1314–15 (11th Cir. 2011).

A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Which facts are material depends on the underlying substantive law. *Id.* The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents,* 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir. 1996).

### III. DISCUSSION

Title II of the ADA prohibits public entities from discriminating against individuals with disabilities. 42 U.S.C § 12132; 28 C.F.R. § 35.130(a); *Quality of Life, Corp. v. City of Margate*, 805 F. App'x 762, 766 (11th Cir. 2020). Section 504 of the Rehabilitation Act similarly prohibits such discrimination by entities that receive federal financial assistance. 29 U.S.C. § 794. Given the textual similarities between the two statutes, "the same standards govern" claims under both, and we "rel[y] on cases construing [Title II and Section 504] interchangeably." *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1133 (11th Cir. 2019) (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010)).

To state a claim under Title II or Section 504, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability. *Silberman,* 927 F.3d at 1134. Additionally, when a plaintiff alleges discrimination based on a public entity's refusal to provide a

reasonable accommodation, the plaintiff "must also establish that he requested an accommodation (or the need for one was obvious) and that the public entity refused to provide a reasonable accommodation." *Schwarz v. The Villages Charter Sch., Inc.*, 165 F. Supp. 3d 1153, 1173 (M.D. Fla. 2016), a*ff'd sub nom. Schwarz v. Bd. of Supervisors on behalf of Villages Cmty. Dev. Districts*, 672 F. App'x 981 (11th Cir. 2017).

A plaintiff cannot establish a claim under the under the ADA or Section 504 for a failure to accommodate unless he demanded such an accommodation. *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir. 1999); *see also U.S. v. Hialeah Hous. Auth.*, 418 F. App'x 872, 876 (11th Cir. 2011) (stating that "[t]his Court has held that under the Rehabilitation Act and the ADA, 'the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made'" and that "[d]efendants must . . . have the ability to conduct a meaningful review of the requested accommodation"). Here, Mr. Lapham has not established that he requested an accommodation from either SWFWMD or FWC.

As an initial matter, Mr. Lapham did not interact with anyone from SWFWMD, let alone request an accommodation from them. (Doc. 78-12 at 61:22-62:4; 126:2-14). Additionally, hunting activities at the Green Swamp WMA are handled exclusively by FWC and not SWFWMD. Doc. 78-2 at 29:17-30:4. Therefore, Mr. Lapham would have to make an accommodation request to FWC if he wanted additional accommodations during his hunting trip, not to SWFWMD. Then, if the accommodation was not allowed by the AMP Summary or is prohibited by SWFWMD rules, FWC would confer with SWFWMD before FWC's Executive Director made the final decision. (Doc. 78-1 at ¶18).

As an AMP and SUV permit holder, Mr. Lapham was already permitted to drive his ATV in areas where doing so is normally prohibited. (Doc. 77-2 at 32:12-17; 78-1 at ¶9). Mr. Lapham specifically alleges disability discrimination because he was denied the accommodation of riding his ATV to get to the hunting grounds from his campsite. However, FWC has an established procedure for disabled hunters who need additional accommodations in addition to the AMP and SUV permit: the hunter must fill out an accommodation request form that is reviewed by FWC's Executive Director. (Docs. 78-1 at ¶16; 79-1 p. 1; 77-2 at 29:17-21, 32:3-33:10, 42:5-11). Mr. Lapham did not fill out the accommodation request form. (Doc. 78-12 at 33:20-34:3; Doc. 78-1 at ¶21).

Instead, Mr. Lapham called the general questions number on The Green Swamp WMA brochure, even though the brochure specifically stated, "information for persons with disabilities can be found at MyFWC.com/ADA." (Docs. 78-1, Ex. A-1 p. 3; 78-12 at 99:13-15). The ADA accommodation request form for hunters who need additional accommodations is found on the website. (Doc. 78-1 at ¶16, Ex. A-3). For Program Accommodation Requests, the form states:

> Please forward your request to the appropriate division or office Division/Office (D/O) responsible for the program or activity in which you are seeking accommodation. You may contact the FWC Office of Human Resources at (850) 488-6411 for assistance in determining the appropriate D/O to contact.

(Doc. 89-6). The form also notes that "requests for accommodations may be presented on this form, in another written format, or orally." (Doc. 89-6). Those seeking more information about "ADA policies and procedures or the status of an ADA accommodation request requiring ADA Committee review" should direct questions "to the FWC EEO/AA/ADA Program Coordinator, Paul Clemons, at (850) 717-2120 or by email." (Doc. 86-6). Mr.

Lapham did not make a request (on the form, in another written format, or orally) to any of the contacts listed on the form. (Doc. 78-1 at ¶¶19, 22).

When Mr. Lapham called the general questions number on the brochure, he asked for an individual who handled "ADA compliant rules" and spoke to someone who knew about the "ADA requirements and the rules" and "quite a few details about the property." (Doc. 78-12 at 36:7-23, 95:25-97:1, 99:13-24). Mr. Lapham learned about the AMP rules at the Green Swamp and asked if he could drive his ATV in areas where ATV use is prohibited. (Doc. 78-12 at 31:7-21, 32:7-14, 100:19-101:3, 132:9-12). Mr. Lapham was ultimately told that the rules prohibited such ATV use. (Doc. 78-12 at 132:9-12).

The FWC employees that Mr. Lapham encountered during his hunting trip at the Green Swamp did not have the authority to grant or deny him the additional accommodation of riding his ATV in areas prohibited by the rules. (Doc. 78-1 at ¶21). The Executive Director of FWC has the authority to grant accommodation requests. (Doc. 78-1 at ¶22; 78-12 at 130:3-5). Because Mr. Lapham did not submit the accommodation request form to FWC, the Executive Director did not have an opportunity to evaluate the request or go through the established procedure to determine whether the request should be granted. *Smith v. Rainey*, 747 F. Supp. 2d 1327, 1338 (M.D. Fla. 2010) ("In cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a 'specific demand' for an accommodation."). Indeed, until this suit was filed, FWC's ADA Coordinator was unaware of Mr. Lapham's desire to drive his ATV in areas normally prohibited by AMP holders at the Green Swamp. (Doc. 78-1 at ¶ 19).

Mr. Lapham's alternative assertion that his failure to formally request an accommodation does not impede his claim because his encounters with an FWC officer and biologist should serve as his request for an accommodation is unavailing. His theory is that despite established policy on how to request an accommodation (one in addition to the one's he already received), his need for an accommodation must have been obvious to the officer and biologist, thus satisfying the request requirement. While it's true that he discussed his desire to use his ATV in a way different from his already approved accommodations with them, and that he discussed with them at various times what the rules allowed and didn't allow (even if the FWC officer was mistaken about the rules at one point), he cites no cases for the proposition that discussing what he is or isn't permitted to do, or even making a request to any individual employee of an agency, particularly where established procedures exist, would be sufficient to impute that conversation as a "request for an accommodation" on the entity itself. Thus, this argument fails.

As such, the Court submits that because Mr. Lapham cannot establish that he requested an accommodation, the defendants' motions for summary judgment should be granted. Further, because the defendants prevail on their motions for summary judgment, Plaintiff's motion is due to be denied as moot.

## IV. RECOMMENDATION

Accordingly, for the reasons discussed above,

1. SWFWMD's motion for summary judgment (Doc. 77) should be granted
2. FWC's motion for summary judgment (Doc. 78) should be granted
3. Plaintiff's motions for summary judgment (Docs. 74 & 76) should be denied as moot.

Recommended in Ocala, Florida on May 26, 2021.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy